UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————————

GUYNELL WRIGHT,

                    Plaintiff,

v.                                                    5:10-CV-0661
                                                     (GTS/TWD)
CITY OF SYRACUSE; JEFFREY T. WRIGHT;
ANDREW NOLAN; DONALD THOMPSON;
ROBERT CALKIN; JOHN DOE(S); JANE DOE(S);
JOHN M. O'CONNOR, III; and THOMAS SIMONE,

                    Defendants.
———————————————————————————————

APPEARANCES:                                          OF COUNSEL:

BOSMAN LAW FIRM, L.L.C.                               A.J. BOSMAN, ESQ.
  Counsel for Plaintiff                               DANIEL W. FLYNN, ESQ.
6599 Martin Street
Rome, NY  13440

HON. ROBERT P. STAMEY                                 JAMES P. MCGINTY, ESQ.
Corporation Counsel for City of Syracuse             AIMEE M. PAQUETTE, ESQ.
  Counsel for Defendants
233 East Washington Street
300 City Hall
Syracuse, NY  13202

HANCOCK ESTABROOK LLP                                 JOHN G. POWERS, ESQ.
  Counsel for Defendants
1500 AXA Tower I
100 Madison Street
Syracuse, NY 13221-4976

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this employment discrimination action filed by Guynell

Wright ("Plaintiff") against the City of Syracuse, six of its employees and an unstated number of

John and Jane Does ("Defendants") is Defendants' motion for summary judgment pursuant to

Fed. R. Civ. P. 56. (Dkt. No. 95.) For the reasons set forth below, the motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Claims

Generally, in his Third Amended Complaint, Plaintiff, an African-American man who

was formerly employed by the City of Syracuse ("the City") as a laborer for the Department of

Public Works ("the Department"), alleges that, throughout his employment with the City, he was

treated differently than similarly situated white employees in the form of promotions, work

assignments and discipline; he was retaliated against for his complaints of racial discrimination;

and he was subject to continuous hostile work environment conditions. (Dkt. No. 45.)

Based on the factual allegations of Plaintiff's Third Amended Complaint, he asserts the

following twenty-one claims: (1) a claim against all Defendants alleging race discrimination in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

("Title VII"); (2) a claim against all Defendants alleging race discrimination in violation of the

New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL"); (3) a claim against all

Defendants alleging hostile work environment in violation of Title VII; (4) a claim against all

Defendants alleging hostile work environment in violation of NYHRL; (5) a claim against all

Defendants alleging retaliation in violation of Title VII; (6) a claim against ll Defendants

alleging retaliation in violation of NYHRL; (7) a claim against all Defendants alleging race

discrimination in violation of Plaintiff's right to equal protection under the Fourteenth

Amendment pursuant to 42 U.S.C. § 1983 ("Section 1983"); (8) a claim against all Defendants

alleging hostile work environment in violation of Plaintiff's right to equal protection under the

Fourteenth Amendment pursuant to Section 1983; (9) a claim against all Defendants alleging retaliation in violation of Plaintiff's right to freedom of speech under the First Amendment pursuant to Section 1983; (10) a claim against the City alleging municipal liability on Plaintiff's Section 1983 claims against the individually named Defendants; (11) a claim alleging breach of contract against all Defendants; (12) a claim against all Defendants alleging race discrimination in violation of  42 U.S.C. § 1981 ("Section 1981"); (13) a claim against all Defendants alleging hostile work environment in violation of Section 1981; (14) a claim against all Defendants alleging retaliation in violation of Section 1981; (15) a claim against all Defendants alleging the deprivation of Plaintiff's property interest in his continued employment in violation of his right to due process under the Fourteenth Amendment pursuant to Section 1983; (16) a claim against all Defendants alleging the deprivation of Plaintiff's property and liberty interest in his good name and reputation in violation of his right to due process under the Fourteenth Amendment pursuant to Section 1983; (17) a claim against all Defendants alleging the deprivations of Plaintiff's rights under Article I of the New York State Constitution; (18) a claim against all Defendants alleging retaliation in violation of Title VII based on the Defendants having successfully contested Plaintiff's unemployment compensation benefits; (19) a claim against all Defendants alleging retaliation in violation of Section 296 based on the Defendants having successfully contested Plaintiff's unemployment compensation benefits; (20) a claim against all Defendants alleging retaliation in violation of Plaintiff's right to freedom of speech under the First Amendment pursuant to Section 1983 based on the Defendants having successfully contested Plaintiff's unemployment compensation benefits; and (21) a claim against all Defendants alleging retaliation in violation of Section 1981 based on the Defendants having successfully contested Plaintiff's unemployment compensation benefits.  (*Id*.)

### B. Undisputed Material Facts

The following material facts[1] are gleaned from Defendants' Local Rule 7.1 Statement of Undisputed Material Facts, and Plaintiff's response thereto. (*See* Dkt. No. 100-7 [Defs.' Rule 7.1 Statement]; Dkt. No. 105 [Pl.'s Rule 7.1 Response Statement].) Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3). It further provides that, to the extent that the nonmoving party fails to do so, the facts asserted in the movant's Statement of Material Facts will be deemed admitted, as long as they are supported by the record. *Id*.

Plaintiff was employed as a "Laborer I" in the Department's Street Cleaning Bureau from at least June of 2006 until his termination in February of 2010.[2] Laborer I is a civil service

---

[1] Conclusions of law in a Local Rule 7.1 Statement, even where unopposed, are not deemed admitted. *See Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179, at *1 (N.D.N.Y. July 13, 2011) (Homer, M.J.), *adopted in its entirety by*, 2011 WL 3439524 (N.D.N.Y. Aug. 5, 2011) (Scullin, J.).

[2] Plaintiff asserts that he began working for the City on October 3, 1988 as a "Laborer I" for the Department's Sanitation Bureau. (*See* Dkt. No. 108, at 44-45 [Dep. of Guynell Wright, Jan. 18, 2013].) However, events which occurred prior to June of 2006 are irrelevant to the resolution of the pending motion since the longest statute of limitations applicable to any of the claims in this action is four years. *See James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 317-318 (E.D.N.Y. 2012) (finding that four-year statute of limitations set forth in 28 U.S.C. § 1658(a) applies to employment discrimination and retaliation claims brought pursuant to 42 U.S.C. § 1981); *Asanjarani v. City of New York*, No. 09-CV-7493, 2011 WL 4343687, at *10 (Aug. 18, 2011) (statute of limitations for employment discrimination claims brought pursuant to Section 1983 is three years); *Ruggerio v. Dynamic Elec. Sys. Inc.*, No. 12-CV-100, 2012 WL 3043102, at *6 (E.D.N.Y. Jul. 25, 2012) (citing 42 U.S.C. § 2000e-5(e)-(f)) (claims are timely under Title VII if an administrative complaint is filed within 300 days of the alleged discriminatory act, and a judicial action is filed within 90 days of receipt of a right-to-sue letter by the administrative body); *Sloth v. Constellation Brands, Inc.*, 883 F. Supp. 2d

classified job title that includes a written job description and written qualifications.  The Laborer

I position is covered within the American Federation of State, County and Municipal Employees

("AFSCME") Local 400 ("Local 400") bargaining unit, of which Plaintiff was a member.

The collective bargaining agreement ("CBA") for the relevant period between the City

and Local 400 provides that the City shall furnish each employee member of Local 400 with a

copy of the existing Work Rules and that any amendments or additions to the Work Rules shall

be discussed with Local 400 and published to its members prior to becoming effective and that

thereafter, any complaint shall be resolved through the grievance procedure.  (*See* Dkt. No. 96-2,

at 64 [Ex. B to Decl. of Donald Thompson, June 13, 2013].)  Section 8.1.4 of the CBA also

provides that, "[i]n the event that an employee receives a written reprimand and one (1) year

elapses without any other disciplinary action being imposed on the employee, such reprimand

shall be removed from the employee's personal file.

The Work Rules provide, in relevant part, at follows:

VII.    Employee Discipline

The City shall not exercise its right to discharge or otherwise
discipline an employee without just cause.  Whenever reasonable, the
City shall subscribe to the principles of progressive discipline.  Set
forth below are the guidelines used by the City in enforcing
progressive discipline and determining the appropriate disciplinary
penalty in any particular circumstance.  These guidelines may be
deviated from when, in the City's opinion, circumstances warrant.

---

359, 373 (W.D.N.Y. 2012) (citing N.Y.C.P.L.R. § 214(2) (McKinneys 2008)) (under Section
296, the limitations period runs for three years from the date on which an action asserting
NYHRL violations is filed, but this limitations period is tolled for the period between the filing
of an administrative charge and the issuance of a right-to-sue letter).

MINOR OFFENSES

| | | |
|---|---|---|
| FIRST, SECOND, THIRD | - | Write up |
| FOURTH | - | Write up and one day suspension |
| FIFTH | - | Write up and three day suspension |
| SIXTH | - | Write up and five day suspension |
| SEVENTH | - | Write up and ten day suspension |
| EIGHTH | - | Write up and termination |

MAJOR OFFENSES

| | | |
|---|---|---|
| FIRST | - | Write up and suspension or termination |
| SECOND | - | Write up and suspension or termination |
| THIRD | - | Write up and termination |

Notwithstanding the provisions of Article 8.1.4 of the parties['] collective bargaining agreement, the discipline imposed for those violations considered to be 'minor' shall be determined by reviewing the number of such violations for which an employee has been disciplined in the twelve (12) months preceding the current violation;

However, upon committing a fourth (4th) 'minor' violation within the above stated twelve (12) month[] period, then that minor violation and each succeeding 'minor' violation shall be based on discipline[] received within the preceding eighteen (18) month period. The discipline imposed for each succeeding violation shall be in accordance with progressive discipline as outlined in the above guidelines;

In all cases of 'major' violations which are subject to suspension and/or termination, the preceding eighteen (18) months disciplinary record (including 'minor' violations) shall be considered in determining the discipline to be imposed in accordance with those outlined in the above guidelines.

(Dkt. No. 107-1, at 9-10 [Ex. 1 to Flynn Aff.].) The Work Rules expressly provide that

"[i]nsubordination is a major . . . violation." (*Id.*, at 7.) To be sure, the Work Rules provide that "[t]heft of any City property or services is prohibited[,]" the level of violation attached to such conduct is not specified. (*Id.*) However, Section 9.2.1 of the CBA refers to fighting, theft, substance abuse and insubordination as "serious violations." (*See* Dkt. No. 96-2, at 53.)

From July 2006 until he was terminated, Plaintiff was subject to a series of disciplinary actions by the City. First, in July 2006, Plaintiff was given a one-day suspension for insubordination. In February 2007, Plaintiff was given a 20-day suspension for fighting with another employee.[3] In July 2007, Plaintiff was given a 20-day suspension for theft of City property. In January 2009, Plaintiff was terminated for insubordination, but then was brought back to work through a "last chance" agreement between the City and Local 400.[4] Finally, on February 24, 2010, Plaintiff was terminated for theft of City Property. Plaintiff does not dispute the fact of these disciplinary actions, but disputes the bases for the actions and/or argues that the City applies their policies inconsistently, discretionarily and disparately.

Defendant, John M. O'Connor, III ("O'Connor") made the decision to terminate Plaintiff. O'Connor was appointed Commissioner of the Department in January 2010 and had no involvement in Plaintiff's discipline or any employment actions regarding Plaintiff prior to his termination in February 2010. Defendant, Jeffrey Wright ("Wright") was the Commissioner of

---

[3]     Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") on March 3, 2008, in which he argued that his 20-day suspension by the City for fighting was disparate treatment based on race. On August 18, 2008, DHR dismissed the complaint based on a lack of probable cause. (*See* Dkt. Nos. 96-29 and 96-30 [Exs. CC and DD to Thompson Decl.].)

[4]     Plaintiff ostensibly filed a complaint with DHR on February 18, 2009, charging the City with race discrimination due to his termination. The DHR later dismissed the complaint citing a lack of evidence of unlawful discrimination. (*See* Dkt. No. 96-31 [Ex. EE to Thompson Decl.].)

the Department through December 2009 and had no involvement in the decision to terminate Plaintiff in February 2010. Defendant, Thomas Simone, III ("Simone") has been the First Deputy Commissioner of the Department since January 2010. He was not a decision maker regarding the determination to terminate Plaintiff in February 2010.

Defendant, Donald Thompson ("Thompson") was the Director of Personnel during the relevant period. Thompson asserts by Declaration that he agreed that it was appropriate to terminate Plaintiff under the circumstances and concurred with O'Connor's decision in that regard. (*See* Dkt. No. 96 at ¶¶ 34-35 [Decl. of Donald Thompson, June 13, 2013].) At his deposition, O'Connor testified regarding his communication with Thompson prior to terminating Plaintiff, as follows: "I had [a] conversation with Don Thompson, who told me the level of progression [Plaintiff] was at and [sic] was instructed and encouraged that I should investigate, and most likely there would be termination here." (Dkt. No. 112, at 56 [Dep. of John M. O'Connor, III, at 152: 4-8, Jan. 4, 2013].) According to Plaintiff, O'Connor told him that Don (meaning Thompson) "said to fire you." (Dkt. No. 106 at 7-8 [Aff. of Guynell Wright at ¶ 41].)

During the relevant time period, Defendant, Robert Culkin ("Culkin") was the Acting Assistant Superintendent of the Department's Street Cleaning Bureau and Defendant, Andrew Nolan ("Nolan") was Acting Superintendent. Both Culkin and Nolan assert that they did not initiate the discipline leading up to Plaintiff's termination, did not participate in the pre-termination hearing and played no role in the decision to terminate Plaintiff, nor were they consulted by O'Connor for their input regarding Plaintiff's discipline. (*See* Dkt. No. 98 at 8 [Decl. of Andrew Nolan at ¶ 49, June 13, 2013; Dkt. No. 100 at 5 [Decl. of Robert Culkin at ¶ 32, June 13, 2013].) Plaintiff counters that he "personally observed [] O'Conn[o]r go to [] Nolan and [] C[u]lkin for advice on how to perform his duties as Commissioner." (Dkt. No. 106 at 8

[Wright Aff. ¶ 42].)

Prior to his termination in February 2010, Plaintiff was provided a copy of the notice of the disciplinary charges against him as well as the possibility that termination would be considered as a result. Plaintiff was afforded a disciplinary hearing at which he was given the chance to respond to the disciplinary charges against him and was permitted to have union representation present to advocate on his behalf. Simone was present at Plaintiff's disciplinary hearing. Although Simone has the authority to advise regarding discipline, his role at Plaintiff's hearing was as an observer and gatherer of information.

Also, Plaintiff exercised his procedural right to grieve his termination. That procedure ran its course according to the grievance procedure set forth in the CBA and terminated prior to the final step, when Local 400 voted not to take the grievance to arbitration.

Plaintiff ultimately filed complaints with the New York State Division of Human Rights ("DHR") on March 26, 2010 and April 28, 2010 challenging his February 2010 termination.[5] (*See* Dkt. No. 96-33 [Ex. GG to Thompson Decl.].) In those complaints, Plaintiff alleges that he was suspended and terminated based on his race and that he was retaliated against for his prior DHR complaints. Plaintiff alleges that white employees are treated differently than black employees in terms of employee discipline. (*See id.*) On June 3, 2010 and June 10, 2010, respectively, the DHR dismissed those complaints for administrative convenience. (*See* Dkt. No. 95-13 [Ex. L to Decl. of Aimee Paquette, June 14, 2013]; Dkt. No. 96-34 [Ex. HH to Thompson Decl.].)

---

[5]     Plaintiff's complaints were cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

After Plaintiff was terminated, he filed a claim for unemployment benefits with the Department of Labor ("DOL").  When the DOL inquired about the circumstances of Plaintiff's termination, the City responded that he had been terminated for cause.  Plaintiff availed himself of the administrative appeal process to challenge the DOL's determination, which was ultimately overturned.  Plaintiff received full payment of back benefits owed.

### C.    Parties' Briefing on Defendants' Motion

#### 1.    Defendants' Memorandum of Law

Generally, in their memorandum of law, the Defendants assert twelve arguments with regard to Plaintiff's claims against them.  (Dkt. No. 100-8 [Defs.' Mem. of Law].)

First, argue the Defendants, Plaintiff's employment discrimination claims based on his termination may be dismissed for the following three reasons: (1) the discriminatory determination claim against Simone, Wright, Culkin, Thompson and Nolan should be dismissed because each was either not the decision maker or was not otherwise actionably involved in the decision to terminate Plaintiff; (2) the discriminatory determination claim against O'Connor and the City should be dismissed because (a) Plaintiff cannot make out a prima facie case that his termination was discriminatory, (b) Defendants have come forward with legitimate, non-discriminatory reasons for Plaintiff's termination, and (c) Plaintiff has no evidence that Defendants' stated reasons for his termination are a pretext for discrimination; and (3) absent individual liability for discriminatory termination, no liability will lie against the City pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55, 98 S .Ct. 2018 (1978).  (*Id.* at 14-25.)

Second,  argue the Defendants, Plaintiffs 18th, 19th, 20th and 21st causes of action alleging discrimination against the City for opposing his application for unemployment benefits may be dismissed for the following three reasons: (1) there is caselaw supporting the legal conclusion

that an employer's opposition of a former employee's application for unemployment benefits is not adverse employment action; (2) where an employer opposes a former employee's unemployment application, but the employee is ultimately awarded those benefits, no adverse employment action occurs in any event; and (3) Plaintiff cannot prove discriminatory animus in the opposition of his unemployment application because he failed to seek any discovery or deposition from the City employee responsible for responding to DOL inquiries. (*Id*. at 26-27.)

Third, argue the Defendants, Plaintiff's hostile work environment claims may be dismissed as a matter of law for the following five reasons: (1) Plaintiff's Title VII and NYHRL claims of hostile work environment must be dismissed for failure to exhaust his administrative remedies before the DHR; (2) Plaintiff's NYHRL claim must be dismissed for failure to file a Notice of Claim under Section 8-115(2) of the City's Charter; (3) all of Plaintiff's hostile work environment claims must be dismissed because Plaintiff has failed to identify evidence that his workplace was permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive to alter the conditions of his employment; (4) Plaintiff's hostile work environment claims against Simone, O'Connor, Wright and Thompson must be dismissed because there is a lack of evidence of their personal involvement or discriminatory purpose; and (5) absent individual liability, no liability will lie against the City under Section 1981 or 1983 pursuant to *Monell*. (*Id*. at 27-36.)

Fourth, argue the Defendants, there is no claim for discriminatory overtime in this action for the following six reasons: (1) the Third Amended Complaint does not include a claim for discriminatory overtime; (2) any claim for discriminatory overtime under Title VII and NYHRL must be dismissed for failure to exhaust administrative remedies before the DHR; (3) any discriminatory overtime claim under NYHRL must be dismissed for failure to file a Notice of

Claim under Section 8-115(2) of the City's Charter; (4) Plaintiff cannot identify any evidence that he was denied overtime due to discrimination; (5) Plaintiff cannot identify any evidence that he was denied overtime because of his race or protected activity; and (6) any claim of discriminatory overtime against Simone, O'Connor, Wright and Thompson must be dismissed because none of them was a decision maker or involved in setting Plaintiff's alleged discriminatory overtime assignments. (*Id*. at 36-43.)

Fifth, argue the Defendants, Plaintiff's discrimination and retaliation claims based on less desirable work assignments must be dismissed for the following five reasons: (1) Plaintiff's claimed discriminatory work assignments fail or do not constitute adverse employment action; (2) any claim of discriminatory work assignments against Simone, O'Connor, Wright and Thompson must be dismissed because none of them was a decision maker or involved in setting Plaintiff's alleged discriminatory work assignments; (3) any claim for discriminatory work assignments under Title VII and NYHRL must be dismissed for failure to exhaust administrative remedies before the DHR; (4) any discriminatory claim for discriminatory work assignments under NYHRL must be dismissed for failure to file a Notice of Claim under Section 8-115(2) of the City's Charter; and (5) absent individual liability, no liability will lie against the City under Section 1981 or 1983 pursuant to *Monell*. (*Id*. at 43-48.)

Sixth, argue the Defendants, Plaintiff's discriminatory and retaliatory discipline claims must be dismissed for the following six reasons: (1) Plaintiff's claim for discriminatory and retaliatory discipline under Title VII and NYHRL must be dismissed for failure to exhaust administrative remedies before the DHR; (2) Plaintiff's claim for discriminatory and retaliatory discipline under NYHRL must be dismissed for failure to file a Notice of Claim under Section 8-115(2) of the City's Charter; (3) some or all of Plaintiff's claims for discriminatory and

retaliatory discipline are barred by the relevant statute of limitations; (4) Plaintiff cannot established that the challenged disciplinary actions were premised on discriminatory or retaliatory animus; (5) discriminatory discipline claim against Simone, O'Connor, Nolan, Culkin and Thompson must be dismissed because none of them was a decision maker or involved in the discipline of Plaintiff; and (6) absent individual liability, no liability will lie against the City under Section 1981 or 1983 pursuant to *Monell*. (*Id*. at 48-57.)

Seventh, argue the Defendants, Plaintiff's claims of discriminatory and retaliatory denial of promotion may be dismissed for the following six reasons: (1) Plaintiff's claims for discriminatory denial of promotion under Title VII and NYHRL must be dismissed for failure to exhaust administrative remedies before the DHR; (2) Plaintiff's claim for discriminatory denial of promotion under NYHRL must be dismissed for failure to file a Notice of Claim under Section 8-115(2) of the City's Charter; (3) Plaintiff's claims for discriminatory denial of promotion under Title VII, NYHRL and Section 1983 must be dismissed because they are time-barred; (4) Plaintiff cannot establish that the claimed promotions for which he was passed over were filled based on discriminatory or retaliatory intent; (5) Plaintiff's claims for discriminatory denial of promotion against Simone, Nolan, Culkin, Thompson and O'Connor should be dismissed because none of them was a decision maker or involved in the alleged failure to promote Plaintiff to crew leader; and (6) absent individual liability, no liability will lie against the City under Section 1981 or 1983 pursuant to *Monell*. (*Id*. at 57-67.)

Eighth, argue the Defendants, Plaintiff's breach of contract claim must be dismissed because Plaintiff has failed to file a claim against Local 400, which is a prerequisite to a breach of contract claim based on a union's breach of its duty of fair representation. (*Id*. at 67-68.)

Ninth, argue the Defendants, Plaintiff's 15th and 16th causes of action, brought under Section 1983 for violation of his Fourteenth Amendment right to Due Process may be dismissed because (1) municipal employees hold no due process rights to promotions, overtime, discipline or work assignments; and (2) a municipal employee's liberty interest in keeping his employment is adequately served where there is a process available to challenge the employer's deprivation, such as a grievance procedure. (*Id*. at 68-70.)

Tenth, argue the Defendants, Plaintiff's 17th cause of action for violations of the New York State Constitution must be dismissed because no private right of action exists under the New York State Constitution where a claim based on the same allegations is asserted under Section 1983. (*Id*. at 70-71.)

Eleventh, argue the Defendants, Plaintiff's claim for punitive damages must be dismissed because no such claim may be maintained against the City as a matter of law and because Plaintiff has failed to identify any evidence to establish that the individual Defendants acted with evil motive or intent. (*Id*. at 71.)

Twelfth, argue the Defendants, Plaintiff's claims against John and Jane Doe defendants must be dismissed because Plaintiff failed to identify them through amendment of his pleading prior to the close of discovery. (*Id*.)

### 2.      Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff asserts eleven arguments: (1) because Plaintiff asserts claims under the NYHRL and the New York State Constitution, this Court should apply New York procedural law when deciding the pending motion for summary judgment; (2) Defendants' motion should be denied because there are triable issues of fact to support Plaintiff's claims that he was unlawfully discriminated against; (3) Defendants'

arguments of failure to exhaust should be rejected because they rely only on the formal charges

to the DHR rather than Plaintiff's intake form and handwritten submissions; (4) Plaintiff's

hostile work environment claims should not be dismissed because there is more than sufficient

evidence for a reasonable jury to conclude that Plaintiff's work environment was filled with

discriminatory intimidation, ridicule and insult that the terms and conditions of his employment

were altered for the worse; (5) the City Charter's Notice of Claim provision does not apply to

Plaintiff's NYHRL claims; (6) Plaintiff's claims relating to his unemployment benefits should

not be dismissed because the City's opposition of Plaintiff's unemployment applications should

be deemed adverse employment action under *Burlington N. & Santa Fe Ry. v. White*, 548 U.S.

53, 68, 126 S. Ct. 2405, 2415 (2006); (7) Plaintiff has viable due process claims because the

CBA here only allows Local 400 to seek a post-termination hearing through arbitration; (8)

Plaintiff's breach of contract claim should not be dismissed because it is a matter of fact for the

jury to decide whether Local 400 breached its duty of fair representation; (9) Plaintiff's claims

under the New York State Constitution should not be dismissed because the availability of a

federal constitutional or statutory claim does not render a claim under the New York State

Constitution subordinate; (10) Plaintiff's entitlement to punitive damages is not suitable for

resolution at the summary judgment stage; and (11) Defendants lack standing to seek dismissal

of the John and Jane Doe defendants. (*See* Dkt. No. 104 [Pl.'s Opp'n Memo. of Law].)

### 3.      Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the Defendants assert eleven arguments:

(1) Plaintiff mischaracterizes his summary judgment burden; (2) Plaintiff fails to meet his burden

with respect to his wrongful termination claim; (3) Plaintiff fails to oppose, and therefore

concedes, Defendants' argument that no claim exists based on discriminatory overtime; (4)

Plaintiff fails to meet his burden on his discriminatory promotion claim; (5) Plaintiff fails to meet his burden on his excessive discipline claim; (6) Plaintiff fails to meet his burden on his hostile work environment claim; (7) Plaintiff effectively concedes he has no discriminatory assignments claim; (8) post-employment contestation of unemployment benefits is not actionable; (9) Plaintiff is barred from asserting a contract claim against the City; (10) Plaintiff does not have a viable due process claim; and (11) Plaintiff has failed to establish sufficient evidence to support a *Monell* claim against the City.  (Dkt. No. 124 [Defs.' Reply Mem. of Law].)

## II.     GOVERNING LEGAL STANDARDS

### A.     Motion for Summary Judgment

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine dispute as to a material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must identify evidence in the record that creates a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted).

As for the genuineness requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Id.* As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted; emphasis added).[6] Similarly, inadmissible hearsay is insufficient to create a genuine issue of fact, "absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (citations omitted).[7]

---

[6]    As the Supreme Court has famously explained, "[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348 (1986) (citations omitted).

[7]    Plaintiff's counsel argues that here, this Court must apply the "universal" rule in the courts of the State of New York that allows a non-moving party to successfully oppose summary judgment with evidence that would be inadmissable at trial because some of Plaintiff's claims arise under New York law. (*See* Dkt. No. 104 at 1-2 [Pl.'s Mem. of Law].) Without commenting on the veracity of Plaintiff's counsel's interpretation of New York law in this regard, the Court notes that it is by now very well-settled law that "[t]he issue of what burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive, under the distinction created by *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938) and its progeny, and accordingly is subject to federal rather than state law." *Tingling v. Great Atl. & Pac. Tea Co.*, 02-CV-4196, 2003 WL 22973452, *2 (S.D.N.Y. Dec. 17, 2003), citing *Erie R. Co. v. Tompkins*. 304 U.S. 64, 58 S. Ct. 817 (1938) and *Celotex v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) (applying federal law on defendant's burden at summary judgment stage to diversity action).

## B.      Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n. 1 (N.D.N.Y. Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

## C.      Plaintiff's Claims

### 1.      Title VII

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of," inter alia, "such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Liability under Title VII is limited to employers, not individuals. *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012).

Filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII. *See Morgan v. NYS Attorney Gen.'s Office*, No. 11-CV-9389, 2013 WL 491525, at *6 (S.D.N.Y. Feb. 8, 2013 ) (citing *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 146 (2d Cir.2012) (citing 42 U.S.C. §§ 2000e–5(e)(1), (f)(1))).  Claims not raised before the EEOC may still be brought in federal court as long as they are "reasonably related" to the claims that were filed with the agency.  *See id.*  (quoting *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*,

990 F.2d 1397, 1401 (2d Cir.1993), superseded by statute on other grounds as recognized in

*Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir.1998)).  A claim is "reasonably related"

where the conduct complained of "would fall within the scope of the EEOC investigation which

can reasonably be expected to grow out of the charge of discrimination." *Butts*, 990 F.2d at 1402.

When determining whether a claim is reasonably related to the claims filed with the EEOC,

courts should focus "on the factual allegations made in the EEOC charge itself, describing the

discriminatory conduct about which a plaintiff is grieving," and "whether the complaint filed

with the EEOC gave that agency adequate notice to investigate discrimination on both bases."

*Williams v. New York City Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal alteration and

citation omitted).  "[I]t is the substance of the charge and not its label that controls."

*Mathirampuzha v. Potter*, 548 F.3d 70, 76-77 (2d Cir. 2008) (quoting *Deravin v. Kerik*, 335 F.3d

195, 200-01 (2d Cir.2003)). "The central question is whether the complaint filed with the [EEO]

gave th[e] agency adequate notice to investigate discrimination on both bases." *Mathirampuzha*,

548 F.3d at 76-77 (citing *Williams*, 458 F.3d at70).

### a.    Hostile Work Environment

In enacting Title VII, Congress intended to protect against "the entire spectrum of

disparate treatment of men and women in employment, which includes requiring people to work

in a discriminatorily hostile or abusive environment."  *Redd v. New York Div. of Parole*, 678

F.3d 166, 174-175 (2d Cir. 2012) (citing *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21, 114 S. Ct.

367 (1993)).

In order to establish a claim for a hostile work environment under Title VII, the

underlying harassment alleged "must be sufficiently severe or pervasive," both subjectively and

objectively, "to alter the conditions of [the plaintiff's] employment and create an abusive

working environment." *Redd*, 678 F.3d at 175 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399 (1986); *Harris*, 510 U.S. at 21-22, 114 S. Ct. 367). Further, the plaintiff must establish that the hostile or abusive treatment was because of his membership in a class of persons protected by Title VII. *See Redd*, 678 F.3d at 175.

A determination of whether an environment is objectively hostile or abusive requires an evaluation of all the circumstances, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Redd*, 678 F.3d at 175 (citing *Harris*, 510 U.S. at 23, 114 S. Ct. 367). Whether an environment is subjectively hostile or abusive may be determined by the effect on the plaintiff's psychological well-being, although no single factor is required. *See id.*

In order to establish his claim for hostile work environment, a plaintiff need not show that his "working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered h[is] working conditions." *Redd*, 678 F.3d at 175 (quoting *Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010)). Typically, isolated incidents will not suffice to establish a hostile work environment, "although we have often noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently severe." *Redd*, 678 F.3d at 175-176 (citing, inter alia, *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir.2004) ("[A] single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." (internal quotation marks omitted)). "For racist comments, slurs, and jokes to constitute a hostile work environment, there [generally] must be more than a few isolated

incidents of racial enmity." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quotation marks omitted).

It is important to keep in mind, however, that "while the central statutory purpose of Title VII was eradicating discrimination in employment, Title VII does not set forth a general civility code for the American workplace." *Redd*, 678 F.3d at 176 (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 771, 96 S. Ct. 1251 (1976); *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006). Title VII is "meant to protect individuals from abuse and trauma that is severe[, but is] not intended to promote or enforce civility, gentility or even decency." *Taylor v. New York City Dept. of Educ.*, No. 11-CV-3582, 2012 WL 3150388, at *8 (E.D.N.Y. Aug. 2, 2012) (quoting *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 213-14 (E.D.N.Y. 1999)). Thus, "the 'mere utterance of an epithet which engenders offensive feelings' is insufficient to sustain a hostile work environment claim." *Tolbert v. Smith*, 09-CV-6579, 2014 WL 906158, at *19 (W.D.N.Y. Mar. 7, 2014) (quoting *Hannon v. Wilson Greatbatch, Ltd.*, No. 00-CV-0203, 2002 WL 1012971, *7 (W.D.N.Y. Apr. 24, 2002). *See also Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir.1998) (occasional offensive racial comments are not sufficiently severe or pervasive to establish a hostile work environment).

In addition to showing that he was subjected to a hostile work environment, a plaintiff must also establish that the conduct which created the hostile environment may be imputed to his employer. *See Shiner v. State Univ. of New York*, No. 11-CV-1024, 2012 WL 5398658, at *4 (W.D.N.Y. Nov. 2, 2012) (citing *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d. Cir.2001)).

The actions of a plaintiff's coworkers will be imputed to the employer if the employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing

about it." *Wiercinski v. Mangia 57, Inc.*, No. 09-CV-4413, 2012 WL 2319142, at *10 (E.D.N.Y. June 19, 2012) (quoting *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995)).

However, the actions of a plaintiff's supervisor are "automatically imputed to the employer unless the employer is able to successfully raise an affirmative defense that examines the reasonableness of the conduct of both the employer and the employee." *Shiner*, 2012 WL 5398658, at *4. This defense requires the employer to show that it "exercised reasonable care to prevent and correct any harassing behavior" and that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257 (1998).

Where an employer "maintains a policy against [] harassment and provides a process through which employees can complain about violations of that policy," it will have met the first prong of its affirmative defense. *Joyner v. City of New York*, No. 11-CV-4958, 2012 WL 4833368, at *3 (S.D.N.Y. Oct. 11, 2012). Further, where a plaintiff fails to take advantage of that system until more than a year after the alleged harassment began, and where the offensive conduct ceased once plaintiff reported it, an employer will establish the second prong of its defense. *See Joyner*, 2012 WL 4833368, at *3 (citing *Leopold*, 239 F.3d at 246).

### b. Race Discrimination and Disparate Treatment

At the summary-judgment stage, properly exhausted Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), and its progeny. *See Mathirampuzha*, 548 F.3d at 78

citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07, 113 S. Ct. 2742 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089 (1981)). At the first stage of the *McDonnell Douglas* analysis, the plaintiff bears the burden to show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Bir v. Pfizer, Inc.*, 510 F. App'x 29, 30 (2d Cir. 2013) (quoting *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir.2012) (internal quotation marks and alteration omitted)). "A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

In order to establish a prima facie case of discrimination based on failure to promote under Title VII, a plaintiff ordinarily must demonstrate that: "(1) [he] is a member of a protected class; (2)[he] applied and was qualified for a job for which the employer was seeking applicants; (3)[he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Yu v. New York City Housing Development Corp.*, 494 F. App'x 122, 124-125 C.A.2 (2d Cir. 2012) (quoting *Estate of Hamilton v. City of New York*, 627 F.3d 50, 55 (2d Cir.2010) (quotation marks omitted).

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate non-discriminatory reason for the employment action at issue. *See Bir*, 2013 WL 362973, at*1 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097 (2000)). If the employer makes this showing, the burden then shifts back to the

plaintiff to show that the employer's proffered explanation is a pretext for discrimination.  *Id.* (citing *Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 492 (2d Cir.2010)).

"'A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'  A change that is 'materially adverse' could consist of, inter alia, 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.'"  *Morgan*, 2013 WL 491525, at *5 (quoting *Galabya v. New York City Bd. of Educ*., 202 F.3d 636, 640 (2d Cir. 2000)).

### c.    Retaliation

To make out a prima facie case of retaliation under Title VII, a plaintiff must show [the following]: (1) participation in a protected activity known to Defendants; (2) an adverse employment action; and (3) a causal connection between the two."  *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 341 (S.D.N.Y. 2009) (collecting cases).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (noting that a protected activity need not "rise to the level of a formal complaint in order to receive statutory protection").  Protected activities encompass "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges."  *Sumner v. United States Postal Serv*., 899 F.2d 203, 209 (2d Cir. 1990).  A plaintiff "need not establish that

the conduct [he] opposed was in fact a violation of [the law]," *Bush v. Fordham Univ.*, 452 F.

Supp. 2d 394, 416 (S.D.N.Y. 2006), but he must demonstrate a "good faith, reasonable belief

that the underlying challenged actions of the employer violated the law," *id.* (quoting *Sumner*,

899 F.2d at 209). The reasonableness of a plaintiff's belief is to be assessed in light of the

totality of the circumstances. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d

Cir.1996).

Adverse employment action is any employer action that "well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Burlington N. &

Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). "[T]ermination is an

adverse employment action." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

Similarly, being laid off constitutes adverse employment action. *See Galabya*, 202 F.3d at 640;

*Walker v. City of New York*, 98-CV-2695, 2002 WL 31051534, at *4 (E.D.N.Y. July 22, 2002)

("Plaintiff's temporary lay-off during the summer of 1997 [was] sufficient to meet Plaintiff's

burden of putting forth evidence to show that the terms of her employment were altered.").

A plaintiff may establish a causal connection between the protected activity and the

adverse employment action "either (1) directly, through evidence of retaliatory animus directed

against the plaintiff by the defendant[,] or (2) indirectly, by showing that the protected activity

was followed closely by discriminatory treatment." *Schanfield*, 663 F. Supp. 2d at 343 (citing

*Knight v. City of New York*, 303 F. Supp. 2d 485, 496 (S.D.N.Y. 2004)).

"Direct evidence giving rise to an inference of discrimination may include 'a showing

that the employer criticized the plaintiff's performance in ethnically degrading terms, made

invidious comments about others in the employee's protected group, or treated employees not in

the protected group more favorably.'" *Id.* (quoting *Hunter v. St. Francis Hosp.*, 281 F. Supp.2d 534, 542 (E.D.N.Y. 2003)).

In order for a court to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case," the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001) (citing cases finding temporal proximity of three months and more to be insufficient).

Claims of retaliation under Title VII are governed by the burden-shifting analysis announced in *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817. *See Guzman v. News Corp.*, No. 09-CV-9323, 2013 WL 5807058, at *19 (S.D.N.Y. Oct. 28, 2013) (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir.2010); *Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-CV-1459, 2013 WL 754710, at *9 (S.D.N.Y. Feb. 28, 2013)). *See also Puglisi v. Town of Hempstead*, — F. App'x —, —, 2013 WL 5663223 (2d Cir. Oct. 18, 2013) (discussing Title VII retaliation claim in context of *McDonnell-Douglas* burden-shifting framework).

"Under *McDonnell Douglas*, once the plaintiff has established a prima facie case of retaliation, the burden of production shifts to the defendant to proffer a legitimate, non-discriminatory business rationale to justify its adverse employment action." *Schanfield*, 663 F. Supp. 2d at 343.

> If the employer demonstrates a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to show that, 'but for' the protected activity, she would not have been terminated. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). The Supreme Court recently clarified that 'a plaintiff making a retaliation claim under [Title VII] must

> establish that his or her protected activity was a but-for cause of
> the alleged adverse action by the employer,' as distinct from 'a
> motivating factor,' which had previously been the standard in the
> Second Circuit. *Id.* at 2534; *see Kessler v. Westchester Cnty.*
> *Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir.2006).

*Guzman*, 2013 WL 5807058, at \*19.  *See also Puglisi*, 2013 WL 5663223; *Leacock v. Nassau*

*Health Care Corp.*, No. 08-CV-2401, 2013 WL 4899723, at \*11 (E.D.N.Y. Sept. 11, 2013);

*Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, — F. Supp. 2d. —, —, 2013 WL 5338516,

at \*18 (S.D.N.Y. 2013).

## 2.  NYHRL

"Because New York courts require the same standard of proof for claims brought under

the NYHRL as for those brought under Title VII," those claims may be analyzed in tandem.

*Leopold v. Baccarat, Inc.*174 F.3d 261, 264, n.1 (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295,

1304, n.4 (2d Cir.1995), abrogated on other grounds by *Burlington Indus.,* 524 U.S. 742, 118 S.

Ct. 2257).  *See also Salmon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226, n.2 (2d Cir. 2008).

Accordingly, a court's ruling regarding a plaintiff's Title VII claims applies with equal force to

those claims under the NYHRL.  *See Leopold*, 174 F.3d at 264, n.1.

Under the NYHRL, however, a plaintiff may allege claims against an individual

defendant as an aider or abettor of NYHRL violations.  In order for a plaintiff to recover against

an aider or abettor of NYHRL violations, she must establish "(1) that []he engaged in conduct

protected by the NYHRL; (2) there is a causal connection between the protected conduct and the

alleged [violations] of the NYHRL; and (3) that [the defendant] 'actually participated' in the

discrimination." *Beattie v. Guilderland Cent. Sch. Dist.*, 124 F. Supp. 2d 802, 805 (N.D.N.Y.

2000) (citations omitted).  *See also* N.Y. Exec. Law § 296.1(a) (McKinney 2012).  Further, a

plaintiff must show that the defendant "aided or abetted a primary violation of the NYHRL committed by another employee or the business itself." *Jordan v. Cayuga Cnty.*, No. 01-CV-1037, 2004 WL 437459, at *4 (N.D.N.Y. Feb. 9, 2004) (quoting *Bennett v. Progressive Corp.*, 225 F. Supp.2d 190, 213 (N.D.N.Y.2002) (internal quotation and emphasis omitted)). *See DeJohn v. Wal-Mart Stores East, LP*, No. 09-CV-1315, 2012 WL 3679204, at *16 (N.D.N.Y. Aug. 17, 2012). However, an individual cannot be held liable for aiding and abetting their own violations of the NYHRL. *See Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012). Finally, an employee is not individually subject to suit as an aider or abettor under the NYHRL "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Miotto v. Yonkers Public Schools*, 534 F. Supp. 2d 422, 427 (S.D.N.Y. 2008) (quoting *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11 (1984)). *See also Tomka*, 66 F.3d at 1317.

### 3.     42 U.S.C. § 1983

In order to establish a claim pursuant to 42 U.S.C. § 1983, a plaintiff must show "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 (1979)).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Kregler v. City of New York*, 821 F. Supp. 2d 651, 655-656 (S.D.N.Y. 2011) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted)).  A plaintiff may allege the personal involvement of a defendant who occupies a supervisory position by alleging that the defendant: "(1) directly participated in the infraction; (2) failed to remedy the wrong after learning of the violation; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) exhibited 'gross negligence' or 'deliberate indifference' to the constitutional rights of [the plaintiff] by having actual or constructive notice of the unconstitutional practices and failing to act."  *Kregler*, 821 F. Supp. 2d at 655-56 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Wright*, 21 F.3d at 501).

A municipality may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)).  In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability.  *See Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018).  Thus, isolated acts of municipal employees are typically not sufficient to establish municipal liability.  However, acts done "pursuant to municipal policy, or [that] were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware" would justify

liability of the municipality.  *Jones*, 691 F.3d at 81.  Further, "a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses. " *Id.*

### a.  First Amendment Retaliation

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Dillon v. Suffolk Cnty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 205 (E.D.N.Y. 2013) (quoting *Garcetti v. Caballus*, 547 U.S. 410, 417, 126 S. Ct. 1951 (2006)).  In order to establish a claim for First Amendment retaliation, a public employee must show that (1) he engaged in "constitutionally protected speech" because he spoke as a citizen on a matter of public concern; (2) he suffered an adverse employment action; and (3) the speech at issue was a substantial or motivating factor in the decision.  *Dillon*, 2013 WL 208950, at *6 (quoting *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir.2003)).  The threshold inquiry is whether the employee spoke as a citizen on a matter of public concern.  "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418.  "The Supreme Court has defined 'a matter of public concern' as one that 'relat[es] to any matter of political, social, or other concern to the community.'" *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir.2009) (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684 (1983)).

In the context of a First Amendment retaliation claim, an adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights[.]" *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006).  Such actions can include "discharge, refusal to hire, refusal to promote,

demotion, reduction in pay, and reprimand," or may include "lesser actions" such as "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." *Zelnik*, 464 F.3d at 226 (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999)).

### b.      Equal Protection

A plaintiff may establish a claim for the violation of her right to equal protection under the Fourteenth Amendment based on race discrimination, since the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (quoting *Feingold* , 366 F.3d at159 & n.20). Thus, claims for hostile work environment and disparate treatment may be brought under § 1983 as equal protection claims. *See Demoret*, 451 F.3d at 149. However, a claim of retaliation for complaining of race discrimination is not properly brought under the Equal Protection Clause. *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996).

### c.      Due Process

The Due Process Clause of the Fourteenth Amendment essentially provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV, § 1. Thus, in order to prevail on a due process cause of action, a plaintiff must establish the deprivation of some tangible property or liberty interest. *See Patterson v. City of Utica*, 370 F.3d 322, 329-30 (2d Cir.2004) ("stigma plus" claim requires a showing of the loss of one's reputation coupled with a more tangible liberty or property interest); *DeMuria v. Hawkes*, 328 F.3d 704, 705 (2d Cir.2003) (substantive due process claim requires plaintiff to identify the deprivation of a protected liberty or property interest, in addition to the requisite conscious-shocking behavior on the part of the government); *McMenemy v. City of Rochester*, 241 F.3d 279, 285-286 (2d Cir.2001) (to establish a procedural due process claim, plaintiff must show that he possessed a protected liberty or property interest, of which he was deprived without due process).

When an individual claims to have a property interest related to employment, courts may look to the relevant contract of employment-either explicit or implicit-or its functional equivalent to determine whether the individual has such a property interest. *See Board of Regents v. Roth*, 408 U.S. 564, 578, 92 S. Ct. 2701 (1972); *Ciambriello v. County of Nassau*, 292 F.3d 307, 314 (2d Cir.2002).

Where a government employee has a constitutionally protected property interest in his employment, "some kind of hearing [is required] prior to [termination]." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487 (1985) (internal quotation marks and citation omitted).

> However, in general, something less than a full evidentiary hearing is sufficient prior to adverse action. Before being terminated, the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. As long as a full post-termination hearing is provided for, the pre-termination hearing may be minimal.

*Arteta v. Cnty. of Orange*, 141 F. App'x. 3, 7 (2d Cir. 2005) (citing *Loudermill*, 470 U.S. at 545-46, 105 S. Ct. 1487; *Locurto v. Safir*, 264 F.3d 154, 173-74 (2d Cir.2001)) (quotations omitted).

It is a well-established legal principle in the Second Circuit "that there is no [procedural] due process violation where . . . pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir.2008) (citing cases). *See also Coollick v. Hughes,* 699 F.3d 211, 217 (2d Cir. 2012).

A government employee may have a cause of action for violation of his right to substantive due process where a government defamation occurs in the course of dismissal from employment resulting in a deprivation of a liberty interest, commonly referred to as a stigma plus claim. *See Lawson v. Rochester City Sch. Dist.*, 446 F. App'x. 327, 329 (2d Cir. 2011) (citing *Patterson ,* 370 F.3d at 330). In order to prevail on such a claim, a plaintiff must prove (1) the utterance of a statement injurious to his reputation that is capable of being proved false and that plaintiff claims is false; and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement. *See Monserrate v. N.Y. State Senate*, 599 F.3d 148, 158 (2d Cir.2010). "An employee's liberty interest is not ordinarily implicated by statements in connection with his termination of employment if there has been no public disclosure of the reasons for the discharge." *Walsh v. Suffolk Cnty. Police Dep't*, 341 F. App'x 674, 675 (2d Cir. 2009) (citing *Bishop v. Wood*, 426 U.S. 341, 348, 96 S. Ct. 2074, 48 (1976) ("Since the ... communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired."). Moreover, a plaintiff cannot prevail on a substantive due process claim unless he shows that the

defendants infringed a liberty interest in an arbitrary or irrational manner and in such a way as to "shock the conscience." *Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168, 173 (2d Cir. 2002). *See also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001).

### 4. 42 U.S.C. § 1981

Employment discrimination claims brought under Section 1981, like those brought under Section 1983, are subject to the same substantive standards as claims brought pursuant to Title VII and NYHRL. *See Jackson v. City of New York*, No. 11-CV-3028, 2014 WL 1010785, at *4 (E.D.N.Y. Mar. 17, 2014). Procedurally, employment discrimination claims brought pursuant to Sections 1981 and 1983 are also analyzed under the *McDonnell Douglas* framework. *See id.*[8] Finally, Section 1981 claims against a municipality, like Section 1983 claims, are subject to analysis under *Monell*. *See Lang. v. New York City Health & Hosps. Corp.*, No. 12-CV-5523, 2013 WL 4774751, at * 5 (S.D.N.Y. Sept. 5, 2013).

### 5. New York State Constitution

Where claims are brought pursuant to the New York State Constitution that mirror claims brought under Section 1983, courts in this Circuit have held that there is no private right of action on the state constitutional claims. *See Canzoneri v. Incorporated Vill. of Rockville Ctr.*, 2013 WL 6330671, at *11 (E.D.N.Y. Dec. 5, 2013) (citing *Krug v. Cnty. of Rennselaer*, 559 F.

---

[8] "The primary doctrinal differences between Title VII claims and employment discrimination claims pursuant to Sections 1981 and 1983 regard (1) the statute of limitations, (2) the requirement that Section 1981 or 1983 plaintiffs must show employment discrimination pursuant to an official policy or custom, (3) that individuals may be held liable under Sections 1981 and 1983, but not under Title VII, and (4) a Title VII claim may be established through proof of negligence, whereas Section 1981 and 1983 claims must be supported by evidence of intentional discrimination." *Jackson v. City of New York*, No. 11-CV-3028, 2014 WL 1010785, at *4, n.10 (E.D.N.Y. Mar. 17, 2014) (citing *Patterson*, 375 F.3d at 225-227).

Supp. 2d 223, 247-48 (N.D.N.Y.2 008)). *See also Clayton v. City of Poughkeepsie*, 2007 WL

2154196, at *7 (S.D.N.Y. June 21, 2007) (quoting *DeVito v. Barrant*, No. 03-CV-1927, 2005

WL 2033722, at *6-7 (E.D.N.Y. Aug. 23, 2005)); *Flores v. City of Mount Vernon*, 41 F. Supp.

2d 439, 446-47 (S.D.N.Y. 1999).

## II.    ANALYSIS

### A.    Whether A Discriminatory Overtime Claim Exists in This Action

After carefully considering the matter, the Court answers this question in the negative,

for the reasons stated by Defendants in their memorandum of law. (Dkt No. 100-8 at 36-43

[Defs.' Mem. of Law].)  To those reasons, the Court adds the following points.

Plaintiff fails to plead a claim for discriminatory overtime in his Third Amended

Complaint.  Moreover, Plaintiff has failed to oppose Defendants' motion for summary judgment

in this regard.  As indicated above in Point II.B. of this Decision and Order, in this District, when

a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the

movant's burden with regard to that argument has been lightened such that, in order to succeed

on that argument, the movant need only show that the argument possesses facial merit, which has

appropriately been characterized as a "modest" burden.  At the very least, Defendants have met

the lightened burden that was created by Plaintiff's failure to respond.

In any event, the Court would reach the same conclusion even if it were to subject the

Defendants' argument to the more rigorous scrutiny appropriate for a contested argument.  The

only evidence of Plaintiff being denied overtime occurred in January 2006, before the period that

is relevant to the claims in this action.  Moreover, the evidence reflects that Plaintiff grieved the

issue, which was resolved in his favor.  Accordingly, there is no evidence that Plaintiff endured a

materially adverse change in the terms and conditions of his employment as it relates to overtime. Therefore, Defendants' motion for summary judgment on any claim of discriminatory or retaliatory denial of overtime is granted.

**B.** **Whether Plaintiff's Claims Under Article I of the New York State Constitution Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated by Defendants in their memorandum of law. (Dkt No. 100-8 at 70-71 [Defs.' Mem. of Law].) To those reasons, the Court adds the following points.

First, Plaintiff's purported claim under the New York State Constitution is that Defendants deprived him of his rights under Article I, essentially claiming a violation of the entire Bill of Rights. Accordingly, Plaintiffs' New York Constitutional claim is overly broad and therefore, should be dismissed for failure to state a claim. In an abundance of caution, the Court interprets Plaintiff's Third Amended Complaint to allege claims under Article I, Sections 6 (due process), 8 (freedom of speech), and 11 (equal protection).

Second, and in any event, as indicated above in Point II.C.5. of this Decision and Order, where Plaintiff's state constitutional claims mirror claims brought under Section 1983, courts in this Circuit have held that there is no private right of action on the state constitutional claims. Accordingly, for this reason alone, Defendants' motion for summary judgment on Plaintiff's 17th cause of action under the New York State Constitution is granted.

**C.** **Whether Plaintiff's Claims Against John Doe(s) and Jane Doe(s) Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative, for the reason stated by Defendants in their memorandum of law. (Dkt No. 100-8 at 71 [Defs.' Mem. of Law].) To that reason, the Court adds the following point.

In opposition to Defendants' legally supported motion for summary judgment seeking dismissal of the John and Jane Doe defendants Plaintiff makes the bald and completely unsupported assertion that Defendants "have no standing" in that regard. (Dkt. No. 104 at 22 [Pl.'s Mem. of Law].) Plaintiff does not dispute that discovery in this action, which lasted in excess of two years, is complete, nor does he argue that further discovery would reveal the identity of these unnamed defendants. Accordingly, the completion of discovery and Plaintiff's failure to identify the John and Jane Doe defendants mandates their dismissal. *See Epps v. City of Schenectady*, No. 10-CV-1101, 2013 WL 717915, at *5 (N.D.N.Y. Feb. 27, 2013). Therefore, Defendants' motion for summary judgment is granted in this regard.

### D. Whether Plaintiff's Breach of Contract Claim Against Defendants Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, for the reason stated by Defendants in their memorandum of law. (Dkt No. 100-8 at 67-68 [Defs.' Mem. of Law].) To that reason, the Court adds the following point.

In opposition to Defendants' motion in this regard, Plaintiff cites inapposite caselaw and fails to address the point made by Defendants, which is that in order to pursue a breach of contract claim against the City under the undisputed facts of this case, Plaintiff must have also pursued a claim against Local 400 for breach of the duty of fair representation. *See Lore v. City of Syracuse*, 670 F.3d 127, 151 (2d Cir. 2012). Plaintiff fails to identify any such claim against Local 400, nor has he alleged such a claim against Local 400 in this action. Accordingly, the caselaw Plaintiff cites, for the proposition that whether a union has breached its duty of fair representation is a fact question for a jury to decide, is irrelevant to the pending issue before the Court. (*See* Dkt. No. 104 at 20 [Pl.'s Mem. of Law citing *Smith v. Hussmann Refrigerator Co.*, 619 F.2d 1229, 1244-45 (8th Cir. 1980)].) Finally, it is worth noting that Plaintiff's

misunderstanding of the law in this regard is dubious considering the supporting legal authority

cited by Defendants, *Lore v. City of Syracuse*, is a case out of the Second Circuit Court of

Appeals, a party to which was represented by Plaintiff's counsel in this action.

Therefore, Defendants' motion for summary judgment regarding Plaintiff's breach of

contract claim is granted.

**E.     Whether Plaintiff's Claims Alleging Discrimination and Retaliation Due to the City's Contestation of His Application for Unemployment Benefits Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative,

for the reasons stated by Defendants in their memorandum of law in chief as well as their reply

memorandum of law. (Dkt No. 100-8 at 26-27 [Defs.' Mem. of Law]; Dkt. No. 124 at 14-15

[Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following point.

Plaintiff opposes Defendants' motion in this regard, arguing that the City's contestation

of his application for unemployment benefits was an adverse action.  However, Plaintiff

concedes that his retaliation claims in this regard are asserted solely against the City, despite the

allegations in the Third Amended Complaint.

Plaintiff acknowledges that courts disagree whether an employer's decision to contest

unemployment benefits constitutes an adverse action, but cites only one case in support of his

argument that opposing unemployment benefits is adverse action, ostensibly suggesting that this

Court should decide the issue here accordingly.  *See Brown v. JP Morgan Chase Bank*, No. 12-

CV-544, 2013 U.S. Dist. LEXIS 95946, at *21-22 (E.D.N.Y. Apr. 10, 2013).[9]

---

[9]     Although, as Defendants point out, this decision is a Report and Recommendation that was later vacated, the case was thereafter reassigned to another District Judge who adopted the Report and recommendation in full.  See *See Brown v. JP Morgan Chase Bank*, No. 12-CV-544, 2013 U.S. Dist. LEXIS 109700 (E.D.N.Y. Aug. 5, 2013).

Nonetheless, this Court finds instructive and persuasive the caselaw holding that an employer's opposition of a terminated employee's application for unemployment benefits is not adverse action for purposes of a retaliation claim. *See Burnett v. Trinity Inst. Homer Perkins Ctr., Inc.*, No. 10-CV-681, 2011 WL 281023, at *3 (N.D.N.Y. Jan. 25, 2011) (citing *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997); *U.S. v. N.Y. City Transit Auth.*, 97 F.3d 672, 677 (2d Cir.1996)). *See also Belardo v. Con-Way Transp. Servs., Inc.*, No. 02-CV-5406, 2005 WL 885016, at *8 (E.D.N.Y. Mar. 28, 2005) ("[A]n employer's actions in objecting to the provision of unemployment benefits to a former employee is not an adverse employment action cognizable under the employment discrimination laws."); *Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 09-CV-12, 2009 WL 3682458, at *9 (S.D.N.Y. Oct. 29, 2009) (granting motion to dismiss retaliation claim regarding employer's cessation of unemployment benefits); *Barriera v. Bankers Trust*, No. 98-CV-3641, 2003 WL 22387099, at *7 (S.D.N.Y. Oct. 20, 2003) (finding no adverse employment action where employer opposed plaintiff's unemployment benefits claim, failed to award severance pay, and informed the EEOC that the plaintiff resigned); *Roman v. Cornell Univ.*, 53 F. Supp. 2d 223, 245 (N.D.N.Y.1999) (holding that employer's opposition to plaintiff's unemployment benefits application does not constitute an adverse employment action).

Therefore, Defendants' motion for summary judgment regarding Plaintiff's retaliation claims as it relates to the City's contestation of his unemployment benefits is granted.

### F. Whether Plaintiff's Hostile Work Environment Claims Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their memorandum of law in chief as well as their

reply memorandum of law. (Dkt No. 100-8 at 31-34 [Defs.' Mem. of Law]; Dkt. No. 124 at 12-14 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Defendants point to Plaintiff's deposition testimony to demonstrate the lack of evidence supporting Plaintiff's hostile work environment claim.  Specifically, Plaintiff testified that he felt his employment environment was hostile because nobody on his crew liked him nor would they communicate with him, despite the fact that they never made any racial comments to him.  (*See* Dkt. No. 108 at 264-264 [Dep. of Guynell Wright, Jan. 18, 2013].)  Plaintiff further testified that he felt like he was walking on egg shells at work because he feared being disciplined for things that other people were not disciplined for, and that despite being a victim when a white employee lifted his leg up behind Plaintiff's head and when another employee patted his butt, Plaintiff was still disciplined.[10]  (*Id.*, at 267-268.)  Defendants argue that these instances do not rise to the level of severity or pervasiveness to establish hostile work environment and that Plaintiff has not established that the alleged hostile or abusive treatment was because of his race.

Plaintiff, in opposition, fails to identify any evidence in the record to create a question of fact on the issues of severity or pervasiveness or the issue of whether the alleged hostile treatment was because of his race.  Instead, Plaintiff argues, in conclusory fashion, that "there is more than sufficient evidence for a reasonable jury to conclude that Plaintiff's work environment

---

[10]    Regarding these incidents of discipline, the Court notes Plaintiff's affirmation that in 1997, another black employee slapped his bottom in the restroom, which resulted in two separate physical altercations between Plaintiff and this other employee: one in the restroom and another later in the day when Plaintiff was on his way home from work.  Plaintiff asserts that both he and the other employee were disciplined as a result.  (*See* Dkt. No. 106 at 2, ¶ 8 [Pl.'s Aff.].)  Plaintiff further asserts that in February 2007, Stanley Gardynski, a white employee, made humping motions with his groin at Plaintiff's head.  Plaintiff admits that afterward, when Gardynski was provoking him again, Plaintiff hit him.  Both Plaintiff and Gardynski were disciplined as a result.  (*Id.* at 3, ¶ 13.)

was filled with discriminatory intimidation, ridicule and insult that the terms and conditions of his employment were altered for the worse." (Dkt. No. 104 at 12 [Pl.'s Mem. of Law].) Accordingly, Plaintiff has not met his burden to identify any fact question for a jury to decide regarding his hostile work environment claim and summary judgment may be granted on this basis alone. However, in an abundance of caution, the Court has reviewed the record to identify any other evidence that could possibly support Plaintiff's hostile work environment claim.

In his affirmation, Plaintiff states that when Nolan was crew leader an employee called Plaintiff the N word in Nolan's presence, but Nolan asked Plaintiff to shake the other employee's hand to resolve the conflict, without disciplining the other employee. (*See* Dkt. No. 106 at 10, ¶ 56 [Pl.'s Aff.].) Plaintiff further asserts that, "[u]pon information and belief, Department of Personnel employee Terri Macri has made statements to other DPW employees that she does not approve of mixed race babies." (*Id.*, ¶ 60.) Other evidence includes Plaintiff's assertion that Nolan said that "no black man was ever going to make anything on my watch" in 2007. (*Id.*, at 8, ¶ 46.)

To be sure, even assuming the admissibility of Plaintiff's double hearsay statements attributable to Terri Macri, their relevance is dubious considering they were made outside the presence of Plaintiff. *See, e.g., Greaves v. St. Luke's-Roosevelt Hosp. Ctr.*, 03-CV-7424, 2005 U.S. Dist. LEXIS 4082, at *33 (S.D.N.Y. March 17, 2005) (rejecting plaintiff's claim of hostile work environment because, "[w]ith the exception of a single hearsay remark, made outside his presence, Greaves fails to point to any discriminatory insult or abuse"); *cf. Benjamin v. Metro. Transp. Auth.*, 07-CV-3561, 2012 WL 3188764, at *12 (S.D.N.Y. Aug. 2, 2012) ("While some of Benjamin's fellow Plaintiffs also make allegations about a hostile work environment, the

record does not indicate that Benjamin was aware of any comments made to other Plaintiffs, let alone was present to hear them and have them impact his own work environment.").  Moreover, Plaintiff's assertion regarding another employee calling him the N-word in Nolan's presence is also of questionable relevance because, while Plaintiff fails to state with specificity when the statement was made, he asserts that it was made when Nolan was a crew leader, which would have been prior to the relevant time period at issue in this action.  (*See* Dkt. No. 117, at 6 [Dep. of Andrew Nolan, Jan. 8, 2013].)

Nonetheless, even assuming the truth, relevance and admissibility of all of the aforementioned evidence, Plaintiff still cannot identify a question of fact regarding his hostile work environment claims.  As indicated in Point II.C.1.a. of this Decision and Order, occasional offensive racial comments are not sufficiently severe or pervasive in order to establish a hostile work environment claim.  Accordingly, Defendants' motion for summary judgment on Plaintiff's hostile work environment claims is granted.

### G.    Whether Plaintiff's Due Process Claims Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their memorandum of law in chief as well as their reply memorandum of law. (Dkt No. 100-8 at 68-70 [Defs.' Mem. of Law]; Dkt. No. 124 at 15-16 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

First, the Court notes that the Third Amended Complaint contains an allegation that "Plaintiff maintained a property and liberty interest in his good name and reputation" which was deprived by Defendants.  (Dkt. No. 45 ¶¶ 103-104 [Pl.'s Third Am. Compl.].)  In his papers in opposition to Defendants' motion for summary judgment on his due process claim, Plaintiff

makes no mention of a liberty interest in his reputation, nor does the record contain any evidence of an offensive statement that was made public. Accordingly, to the extent any substantive due process claim was intended by Plaintiff, it is dismissed from this action.

Second, to the extent Plaintiff alleges a procedural due process claim based on any employment action other than termination, those claims are dismissed. Courts in this Circuit hold that an employee does not have a constitutionally protected interest to be free from employment actions other than termination. *See Barnes v, Pilgrim Psychiatric Ctr.*, 860 F. Supp. 2d 194, 204 (E.D.N.Y. 2012) (citing cases).

Finally, regarding Plaintiff's termination, it is clear that the grievance procedure set forth in the CBA provided Plaintiff the appropriate pre-deprivation hearing as required by the Due Process Clause. *See Adams*, 517 F.3d at 128. Regarding post-deprivation procedures, Plaintiff argues that the CBA "replaces N.Y. Civil Service Law § 75 and any other procedures to challenge the termination of employment." (Dkt. No. 104 at 17 [Pl.'s Mem. of Law].) To be sure, the CBA provides, in relevant part, that the grievance procedure outlined therein "shall apply in lieu of Section 75 and 76 of the Civil Service Law for any employee who would be covered by those sections." (Dkt. No. 96-2 at 52 [Ex. B to Thompson Decl.].) However, there is nothing in the CBA or otherwise that prevents Plaintiff from seeking a post-deprivation hearing. "[T]he availability of an Article 78 proceeding after the fact provides all the process that is due." *Kruggel v. Town of Arietta,* No. 11-CV-1250, 2013 WL 5304184, at *4 (N.D.N.Y. Sept. 19, 2013) (quoting *Sebast v. Mahan*, 754 F. Supp. 2d 423, 431-32 (N.D.N.Y. 2010)).

For these reasons, Defendants' motion for summary judgment regarding Plaintiff's due process claims is granted.

**H.   Whether Plaintiff's Claims Based on Discriminatory Assignments Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their memorandum of law in chief as well as their reply memorandum of law. (Dkt No. 100-8 at 43-45 [Defs.' Mem. of Law]; Dkt. No. 124 at 14 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Plaintiff has failed to oppose Defendants' motion for summary judgment in this regard. As indicated above in Point II.B. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  At the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond.

In any event, the Court would reach the same conclusion even if it were to subject the Defendants' argument to the more rigorous scrutiny appropriate for a contested argument.  The receipt of undesirable work assignments must be accompanied by a materially adverse change in employment, such as demotion or loss of wages, in order to be actionable.  *See Henry v. NYC Health & Hosp. Corp.*, No. 13-CV-6909, 2014 WL 957074, at *5 (S.D.N.Y. Mar. 10, 2014). Here, Plaintiff complains that "he and other Black employees have been given less desirable assignments" such as those requiring work outdoors in the hazardous weather.  (*See* Dkt. No. 42 at ¶ 28 [Pl.'s Third Am. Compl.].)  At his deposition, however, Plaintiff conceded that it was part of his job to go out in the cold and shovel snow.  (*See* Dkt. No. 108 at 116 [Pl.'s Dep.].)  There is no evidence that such job assignments were accompanied by a loss in job title or pay.

Accordingly, the alleged discriminatory job assignments cannot form the basis of a discrimination or retaliation claim since they were not materially adverse. Therefore, Defendants' motion for summary judgment on any claim of discriminatory or retaliatory reassignment of job duties is granted.

## I.  Whether Plaintiff's Claims Based on Discriminatory Denial of Promotion Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their memorandum of law in chief as well as their reply memorandum of law. (Dkt No. 100-8 at 57-67 [Defs.' Mem. of Law]; Dkt. No. 124 at 6-9 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

In support of his discriminatory failure to promote claim, Plaintiff alleges that he asked Defendants Nolan and Wright for promotions and that, when asked why he did not promote black employees, Nolan responded, "A black man will never make anything on my watch." (*See* Dkt. No. 42 at ¶¶26-27 [Pl.'s Third Am. Compl.].)

The following facts are undisputed. The opportunities for a pay grade promotion just above Plaintiff's job title, Laborer I, include Laborer II, Motor Equipment Operator ("MEO") I and MEO II, all of which are within Plaintiff's bargaining unit. Each of these positions require a Commercial Driver's License ("CDL"), which Plaintiff never sought. Plaintiff also never applied for any of these pay grade promotions. The title of "Crew Leader" is a position within the Street Cleaning Bureau, which falls under a separate CBA between the AFSCME 1773 and the City. (*See* Dkt. No. 96-7 [Ex. G to Thompson Decl.].) Under that CBA, all Crew Leader vacancies must be advertised and filled by qualified Local 1773 members before being offered to members of other bargaining units, such as Local 400.

45

Although the City has no record of Plaintiff ever having applied for a Crew Leader position, Plaintiff asserts that between 2006 and 2010, whenever a bid was posted for a Crew Leader position, he submitted an application, but was never promoted to Crew Leader. However, at his deposition, when asked what positions he put in a bid for between 2006 and 2010, Plaintiff replied that he "put in a bid for a crew leader" and later that he bid for "a couple of" and "more than one bid" for Crew Leader. (Dkt. No. 108 at 96, 99.)[11] Plaintiff went on to explain that there was one Crew Leader position in Sanitation, and another in Street Cleaning. Plaintiff said that Sanitation position went to Efren Maldonado, who had previously worked in Street Cleaning and Sanitation, and the other position went to Thomas Rubado, who came from the Aviation Department. Finally, when asked what reason he has to believe he did not get those jobs because of his race, Plaintiff testified that he believes he didn't get those positions because "they didn't like me." (*Id.* at 105.)

According to Jeffrey Wright, who was Commissioner through the end of 2009, the only Crew Leader positions that he appointed in the Street Cleaning Bureau during his tenure were filled by existing Local 1773 members, Thomas Rubado and Richard Shepherd. Since both were qualified, the position would not have been opened to other bargaining units. The only non Local 1773 member who filled a Crew Leader position during Wright's tenure was Efran Maldonado, a minority who was an MEO at the time of his promotion. Also, that position opened in the Department of Sanitation in 2006 and had entirely different job responsibilities than that of the Street Cleaning Bureau. (*See* Dkt. No. 97 at ¶¶ 48-49 [Decl. of Jeffrey Wright, June 13, 2013].)

---

[11] Plaintiff also put in a bid for a gardener position in the Parks and Recreation Department.

Nolan, Superintendent, asserts that he was not involved in formal hiring decisions, which are made by the Commissioner. (*See* Dkt. No. 98 at ¶ 13 [Decl. of Andrew Nolan, June 13, 2013].) Plaintiff disputes this, citing Nolan's promotion of Ray Garcia to the vacant position of "acting crew leader" in 2007. It was at that time that, Plaintiff asserts, Nolan made the comment that "no black man was ever going to make anything on my watch." (Dkt. No. 106 at ¶¶ 44-46 [Pl.'s Aff.].)

Jeffrey Wright, who was Commissioner through 2009, affirms that, in the day-to-day operation of the Street Cleaning Bureau, it becomes necessary to name an acting Crew Leader if the actual Crew Leader is out sick or on vacation. These positions are temporary and are made by the Superintendent, not the Commissioner. (*See* Dkt. No. 97 at ¶ 51 [Jeffrey Wright Decl.].) Wright further affirmed that "at some point in 2007," Plaintiff came to Wright and told him that he should be considered for promotion to Crew Leader; not for a specific opening, but more generally in the future. Then Commissioner Wright explained to Plaintiff that he needed to make himself more competitive, "including obtaining his CDL and applying for some of the intermediate positions such as Laborer II and MEO." (*Id.*, at ¶ 50.) Wright explained that, "[i]n other words, since a Crew Leader must supervise laborers and heavy equipment and motor vehicle operators and be familiar with the operation of all of the equipment in the Bureau, it helps to have experience actually performing those jobs and operating that equipment." (*Id.*)

At his deposition, Plaintiff explains that he was told by Bobby Reed, a supervisor, that "next week you are going to be the acting crew leader" but then when that week arrived, Ray Garcia was the acting crew leader. (Dkt. No. 108 at 106-107 [Pl.s' Dep.].) Plaintiff agreed "that an acting crew leader is someone who is working out of title for a short period of time while somebody is either on medical leave or vacation." (*Id.* at 107:9-14.) Plaintiff also explained that

during this short period of time, the acting crew leader is paid at the Crew Leader rate. Plaintiff testified that he felt that Nolan gave Ray Garcia the acting crew leader position because of racial animosity toward Plaintiff due to Nolan's comment that a black man wasn't going to make anything on his watch. (*Id*. at 108.) Plaintiff clarified that Nolan made this comment after he made Ray Garcia acting crew leader. (*Id.*)

In his opposition to Defendants' motion, Plaintiff cites one factual question that he argues warrants a denial of summary judgment. Specifically, Plaintiff argues that there is a question of fact regarding whether Nolan made the statement that no black man will ever make anything on his watch. Moreover, Plaintiff contends that even where Nolan was not the decision maker, under a Cat's Paw theory of liability, his racial animus may be imputed to the decision maker.

As indicated in Point II.C.1.b. of this Decision and Order, Plaintiff bears the burden at trial to show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *See Bir v. Pfizer, Inc.*, 510 F. App'x 29, 30 (2d Cir. 2013). In order to establish a prima facie case of discrimination based on failure to promote, Plaintiff must show that "(1) [he] is a member of a protected class; (2)[he] applied and was qualified for a job for which the employer was seeking applicants; (3)[he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications."

Plaintiff cannot establish a prima facie case of discriminatory failure to promote for several reasons. First, there is evidence that Plaintiff was not qualified to be a Crew Leader, given his lack of experience and failure to obtain a CDL, which Plaintiff does not dispute. Next, as it relates to Plaintiff's claim that Defendants failed to promote him, instead promoting Mr.

Rubado and Mr. Maldonado, to vacant Crew Leader positions, there is absolutely no evidence of racial animus underlying the decision to promote Mr. Rubado and Mr. Maldonado. In fact, Plaintiff testified that he was not promoted to either of these positions because " they didn't like me" but then later also testified that Mr. Rubado and Mr. Maldonado were in a position to get those jobs. (Dkt. No. 108 at 105, 106.) Moreover, even if Plaintiff could establish a prima facie case of discrimination on this basis, Defendants have identified legitimate, non-discriminatory reasons, which Plaintiff does not dispute, for promoting Mr. Rubado and Mr. Maldonado rather than Plaintiff: those gentlemen were qualified for the position and were members of Local 1773, which , pursuant to the CBA, required that the City promote them before opening the position up to members of other bargaining units, such as Local 400. Given the lack of evidence regarding racial animus attached to those promotions, Defendants are entitled to summary judgment in that regard.

Regarding Nolan's assignment of Ray Garcia to a temporary, acting crew leader position instead of Plaintiff, the Court notes that it is questionable whether such an assignment may be considered a promotion. *See Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004) (concluding that an assignment to substitute for an absent supervisor generally cannot fairly be labeled a promotion). Nonetheless, Plaintiff does not identify any evidence suggesting that he was qualified for the acting crew leader position, while Mr. Garcia, who was an MEO II, three positions ahead of Plaintiff, was clearly qualified. Because Plaintiff cannot show that the acting crew leader position was given to someone less qualified than him, he cannot establish a prima facie case of discrimination based on failure to promote.

For these reasons, Defendants' motion for summary judgment on Plaintiff's claims based on failure to promote is granted.

**J.     Whether Plaintiff's Claims Based on Discriminatory Discipline Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their memorandum of law in chief as well as their reply memorandum of law.  (Dkt No. 100-8 at 48-577 [Defs.' Mem. of Law]; Dkt. No. 124 at 9-12 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following point.

Plaintiff has not identified any evidence of discriminatory or retaliatory animus based on his race as it relates to discipline.  The sole question of fact Plaintiff identifies, which is whether Nolan stated in 2007 that no black man would get promoted on his watch, is irrelevant to the disciplinary actions taken against Plaintiff.  It is undisputed that the only Defendant who was the decision maker regarding the disciplinary actions against Plaintiff was Commissioner Wright.[12]  Moreover, other than a bald and unsupported assertion by Plaintiff in his response to Defendants' Local Rule 7.1 statement, there is no evidence that Nolan had anything to do with the Commissioner's decision to discipline Plaintiff.  Finally, there is absolutely no evidence of racial animus or bias on behalf of Commissioner Wright against Plaintiff.

Moreover, for the reasons stated in Defendants' memoranda, Plaintiff has failed to adduce any evidence that similarly situated white employees were treated more favorably than Plaintiff in terms of discipline.  (*See* Dkt. No. 100-8 at 51-55 [Defs.' Mem. of Law].)

For these reasons, Defendants' motion for summary judgment on Plaintiff's claims regarding discriminatory and/or retaliatory discipline is granted.

---

[12]     In his response to Defendants' Local Rule 7.1 Statement of Material Facts, Plaintiff denies that Nolan was not the decision maker regarding the discipline he received between 2006 and 2009.  (*See* Dkt. No. 105 at ¶ 68 [Pl.'s Rule 7.1 Response Statement].)  In support of this purported denial, Plaintiff asserts that Commissioner Wright relied on Defendants Nolan and Culkin to make the final determination regarding discipline.  However, Plaintiff cites a portion of his deposition testimony that does not support this assertion.  Accordingly, this fact is deemed admitted.

**K.     Whether Plaintiff's Claims Based on Discriminatory Termination Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their memorandum of law in chief as well as their reply memorandum of law.  (Dkt No. 100-8 at 14-25 [Defs.' Mem. of Law]; Dkt. No. 124 at 2-6 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Plaintiff has not identified any evidence of discriminatory or retaliatory animus based on his race as it relates to his termination.  The sole question of fact Plaintiff identifies, which is whether Nolan stated in 2007 that no black man would get promoted on his watch, is irrelevant to Plaintiff's termination.  The evidence reflects that Defendant O'Connor, who was Commissioner at the time, made the decision to terminate Plaintiff.  Even assuming that Defendants Thompson and Simone advised or encouraged O'Connor to terminate Plaintiff, there is no evidence of racial animus or bias on behalf of O'Connor, Thompson[13] or Simone against Plaintiff.

The only person that Plaintiff has identified as having racial animus is Nolan.  Nolan affirms that he did not initiate the discipline leading up to Plaintiff's termination, did not participate in the pre-disciplinary hearing and played no role in the decision to terminate Plaintiff.  Nolan further affirms that O'Connor did not ask for his input regarding the termination.  (*See* Dkt. No. 98 at ¶ 49 [Nolan Decl.].)  O'Connor affirms that he was the sole

---

[13]     At his deposition, Plaintiff testified that he did not believe that O'Connor or Thompson decided to terminate him because he is black.  (*See* Dkt. No. 108 at 222 [Pl.'s Dep.].) Plaintiff testified that he thought Thompson retaliated against him for making complaints of discrimination because Thompson "never helped me out" when Plaintiff would go to him with problems.  (*Id.* at 222-223.)  Finally, at his deposition, Plaintiff testified that the only involvement Simone had was being present at meetings and that "[h]e didn't do anything, really."  (*Id.* at 247.)

decision maker in the determination to terminate Plaintiff.  (*See* Dkt. No. 99 at ¶ 36 [Decl. of John M. O'Connor, III, June 13, 2013].).  In making the decision to terminate Plaintiff, O'Connor states that he relied upon

> (a) the Police Report and the statements Guynell Wright made to the police that he knew he was violating DPW policy; (b) the fact that Guynell Wright was in the last stage of disciplinary progression; (c) the fact that Guynell Wright had been previously received significant discipline in 2007 for near identical conduct; and (d) a review of Guynell Wright's prior "thick" disciplinary file which reflected numerous prior major and minor violations and demonstrated a pattern of misconduct over time.

(*Id.* at ¶ 37.)  In his response to Defendants' Local Rule 7.1 Statement of Material Facts, Plaintiff denies the assertion that Nolan did not initiate the discipline leading up to Plaintiff's termination, did not participate in the pre-disciplinary hearing and played no role in the decision to terminate Plaintiff.  (*See* Dkt. No. 105 at ¶ 47 [Pl.'s Rule 7.1 Response Statement].)  In support of his purported denial, Plaintiff cites his affirmation that he personally observed O'Connor go to Nolan and Culkin for advice on how to perform his duties as Commissioner.  (*See* Dkt. No. 106 at ¶ 42 [Pl.'s Aff.].)  Plaintiff has failed to identify any evidence of Nolan's participation in his termination, either directly or by communication or encouragement of a decision maker.

For these reasons, Defendants' motion for summary judgment as it relates to Plaintiff's claims for discriminatory and/or retaliatory termination is granted.

Finally, the Court notes that Plaintiff has identified no evidence of a causal connection between his DHR complaints and the alleged adverse actions.  There is no direct evidence of retaliatory motive on behalf of any decision maker.  Moreover, there is no temporal proximity between Plaintiff's complaints and the adverse actions.  For example, Plaintiff complained to DHR in March 2008, but the next adverse action did not occur until January 2009.  Also,

Plaintiff was terminated an entire year after his February 2009 DHR complaint.  For these reasons, in addition to those asserted by Defendants in their memoranda of law, Plaintiffs' retaliation claims are dismissed.

Because the Court dismisses Plaintiff's claims for the absence of a question of material fact as to the substantive elements of those claims, the Court need not address the remainder of Defendants' arguments for dismissal, such as failure to exhaust and failure to file a notice of claim.

**ACCORDINGLY**, it is

**ORDERED** that the Defendants' motion for summary judgment (Dkt. No. 95) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's claims are dismissed with prejudice.     The clerk is directed to enter judgment in favor of the defendants and close this case.

Dated: March 31, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge